IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA and   )
  )
THE STATE OF INDIANA,   )
  )
      Plaintiffs,   )
  )
  )   Civil Action No. 1:13-cv-1964
    v.   )
  )   <u>CONSENT DECREE</u>
  )
THE CITY OF CRAWFORDSVILLE,   )
INDIANA   )
  )
      Defendant.   )
_____)

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE .............................................................................................. 2

II. APPLICABILITY ............................................................................................................ 2

III. DEFINITIONS................................................................................................................. 3

IV. CIVIL PENALTY ........................................................................................................... 5

V. COMPLIANCE REQUIREMENTS: IMPROVEMENTS AT THE POTW ............................ 7

    A. General Compliance Requirements ...................................................................... 7

    B. Safety and Operational Review ........................................................................... 8

    C. Ban on Septage ................................................................................................... 9

    D. Asset Management Plan ....................................................................................... 9

    E. Investigation of Exceedances and Corrective Measures ...................................... 9

VI. COMPLIANCE REQUIREMENTS: PRETREATMENT MEASURES ............................. 10

    A. Sewer Use Survey ............................................................................................. 10

    B. SIU Requirements ............................................................................................. 10

VII. REPORTING REQUIREMENTS.................................................................................. 11

VIII. APPROVAL OF DELIVERABLES.............................................................................. 13

IX. STIPULATED PENALTIES .......................................................................................... 15

X. FORCE MAJEURE ...................................................................................................... 18

XI. DISPUTE RESOLUTION............................................................................................. 20

XII. INFORMATION COLLECTION AND RETENTION ..................................................... 23

XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................................ 25

XIV.  COSTS .............................................................................................................................. 27

XV.  NOTICES ........................................................................................................................... 28

XVI.  EFFECTIVE DATE .......................................................................................................... 29

XVII.  RETENTION OF JURISDICTION ................................................................................. 30

XVIII.  MODIFICATION ........................................................................................................... 30

XIX.  TERMINATION ............................................................................................................... 30

XX.  PUBLIC PARTICIPATION .............................................................................................. 31

XXI.  SIGNATORIES/SERVICE .............................................................................................. 32

XXII.  INTEGRATION .............................................................................................................. 32

XXIII.  APPENDICES ............................................................................................................... 32

XXIV.  FINAL JUDGMENT ..................................................................................................... 33

Appendix A: Asset Management Plan ...............................................................38

WHEREAS, Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Indiana, on behalf of the Indiana Department of Environmental Management ("IDEM"), have filed a complaint in this action concurrently with this Consent Decree alleging that Defendant City of Crawfordsville, Indiana ("Crawfordsville" or "the City"), violated Section 309 of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1319.  The Complaint against the City alleges that the City is liable under Section 309(b) and (d) of the Act, 33 U.S.C. § 1319(b) and (d), for assessment of civil penalties and injunctive relief.  Specifically, the Complaint includes six claims for relief, each asserting that the City's "Publicly Owned Treatment Works" ("POTW" or "Facility") violated Section 301(a) of the CWA, 33 U.S.C. § 1311, as well as the limitations of National Pollutant Discharge Elimination System Permit No. IN0032964 ("the Permit"), which was issued by the Indiana Department of Environmental Management ("IDEM") under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).  The Complaint seeks civil penalties for past violations and injunctive relief to prevent further violations of, and to ensure compliance with, the CWA.

The City does not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with

the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Act, 33 U.S.C. § 1319(b), and over the Parties.  Venue lies in this District pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the City and the POTW operated by the City are located in this judicial district and the violations occurred in this judicial district. For purposes of this Decree, or any action to enforce this Decree, the City consents to the Court's jurisdiction over this Decree, and any such enforcement action, and over the City, and consents to venue in this judicial district.  This Court has supplemental jurisdiction over the State law claims asserted by the State of Indiana pursuant to 28 U.S.C. § 1367.

2.    For purposes of this Consent Decree, the City agrees that the Complaint states claims upon which relief may be granted pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d).

3.    Notice of commencement of this action has been given to the State as required by Section 309(b) of the Act, 33 U.S.C. § 1319(b), and the State has been joined as a Party to this action as required by Section 309(e) of the Act, 33 U.S.C. § 1319(e).

## II. APPLICABILITY

4.    The obligations of this Consent Decree apply to and are binding upon the United States and the State, and upon the City and any successors, assigns, or other entities or persons otherwise bound by law.

5.	No transfer of ownership or operation of the Facility, or of any portion of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the City of its obligation to ensure that the terms of the Decree are implemented.  At least thirty (30) Days prior to such transfer, the City shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Attorney for the Southern District of Indiana, and the United States Department of Justice, in accordance with Section XV of this Decree (Notices).  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

6.	The City shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  The City shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.	In any action to enforce this Consent Decree, the City shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

8.	Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act

or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" means the complaint filed by the United States and the State in this action;

b.      "Consent Decree" or "Decree" means this Decree and all appendices attached hereto (listed in Section XXIII, Paragraph 102);

c.      "Current NPDES Permit" means the City's National Pollutant Discharge Elimination System permit, issued in October 1996 as Permit No. IN0032964, or such permits that succeed this permit issued and in effect at a relevant time;

d.      "Date of Entry" means the date of entry of this Decree by the Court after satisfaction of the public notice and comment procedures of 28 C.F.R. § 50.7;

e.      "Date of Lodging" means the date the Decree is filed for lodging with the Clerk of the Court for the United States District Court for the Southern District of Indiana;

f.      "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

g.      "Defendant" means the City of Crawfordsville, Indiana;

h.      "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

i.      "Effective Date" has the definition provided in Section XVI;

j. "IDEM" means the Indiana Department of Environmental Management and any successor departments or agencies of the State;

k. "Paragraph" means a portion of this Decree identified by an arabic numeral;

l. "Parties" means the United States, the State, and the City;

m. "Section" means a portion of this Decree identified by a roman numeral;

n. "SIU" means significant industrial user, as that term is defined in 40 C.F.R. § 403.3(v) (1);

o. "State" means the State of Indiana;

p. "United States" means the United States of America, acting on behalf of EPA; and

q. "POTW" means the City's Publicly Owned Treatment Works, a wastewater treatment plant located at 515 Bluff St., identified in the City's Current NPDES Permit.

## IV. CIVIL PENALTY

9. Within thirty (30) Days after the Effective Date of this Consent Decree, the City shall pay the sum of $48,000 as a civil penalty to the United States together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

10. Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be

provided to the City, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of Indiana, 10 West Market St., Suite 2100, Indianapolis, Indiana 46204, (317) 226-6333. At the time of payment, the City shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. City of Crawfordsville, and shall reference the civil action number and DOJ case number 90-5-1-1-09648, to the United States in accordance with Section XV of this Decree (Notices); by email to acctsreceivable.CINWD'epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

11. Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal or State income tax.

12. Within thirty (30) Days after the Effective Date of this Consent Decree, the City shall pay the sum of $48,000 as a civil penalty to the State of Indiana. At the time of payment, the City shall send a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. City of Crawfordsville and shall reference the civil action number, along with a check made payable to: Indiana Department of Environmental Management Special Fund, delivered to:

> Cashier
> Indiana Department of Environmental Management
> Mail Code 50-10-C
> 100 North Senate Avenue
> Indianapolis, IN 46204-2251

## V. COMPLIANCE REQUIREMENTS: IMPROVEMENTS AT THE POTW

13.     Nothing herein shall be construed as relieving the City of the duty to comply with the Clean Water Act or any implementing regulations, or with any other federal, state, or local law, regulation, permit or other requirement.

### A)  General Compliance Requirements

14.     Permit Compliance.  The City shall comply with all terms and conditions of the Permit.

15.     The City shall conduct sampling on representative days as directed by Section I.b.1 of the City's NPDES permit.

16.     The City shall properly maintain and operate the Facility's automatic samplers by taking the actions described in Paragraphs 17 to 19.

17.     The City personnel shall visually inspect each automatic sampler and corresponding power surge protector no less than one time per week to ensure that each sampler and surge protector is in proper working order. If the City does not have the technical expertise to properly locate the automatic samplers or provide proper maintenance for them, the City will retain the services of an independent and properly certified contractor with the technical expertise to implement proper sampling techniques, preventative maintenance and calibration services on the City's automatic samplers in accordance with the manufacturer's recommended maintenance and calibration program.  The City shall retain all records of the maintenance and calibration services performed by either the City personnel or an independent contractor.

18.     The City personnel or an independent contractor shall repair any malfunctioning automatic sampler and any malfunctioning power surge protector in a timely manner.  The City shall retain a log and record the date of any malfunction, the steps that the City took to repair the malfunction, and the date that the automatic sampler(s) came back into full operating service.  If the City cannot repair a malfunctioning automatic sampler within ten (10) Days of becoming aware of a malfunction, the City shall enter into a contract to purchase a replacement automatic sampler for delivery no later than twenty (20) Days after the start of the malfunction.  As soon as any automatic sampler fails to operate properly, the City shall ensure that manual sampling in accordance with Part I. of the City's NPDES Permit is instituted immediately.

19.     The City shall submit the name, contact information and qualifications of any contractor it plans to retain to perform services under Paragraph 18 to EPA and to the State for approval before retaining them.

**B)  Safety and Operational Review**

20.     On at least a bi-annual basis, beginning from the date of entry of the Consent Decree, accredited representatives of the City shall perform a safety and operational review at the POTW.  As a result of this review, the City shall make findings and recommendations, prepare a report describing these findings and recommendations and a schedule for any recommended corrective measures, submit the report to EPA and IDEM, and implement any resulting recommendations pursuant to the schedule as approved by EPA and IDEM under Section VIII.  Reports submitted under this paragraph shall contain the certification required by Paragraph 39.

21.     On at least a bi-annual basis, beginning from the date of entry of the Consent Decree, the City shall conduct a training for all plant employees regarding best practices.

### C) Ban on Septage

22.     The City shall continue not to accept septage.

### D) Asset Management Plan

23.     No later than six months after the Consent Decree is entered, the City shall develop and submit to EPA and the State for approval an asset management plan, as described in Appendix A, to ensure the long-term sustainability of the wastewater utility.  The City shall utilize the plan to make decisions on when it is most appropriate to repair, replace, or rehabilitate particular assets and long-term funding strategies.  The City shall submit follow-up reports to EPA and the State on a bi-annual basis.

### E) Investigation of Exceedances and Corrective Measures

24.     No later than ninety (90) Days after the Consent Decree is entered, the City shall prepare and submit a report to EPA and IDEM covering the period from December 1, 2012 through the date of submission that: 1) describes what methods and standards the City used to investigate whether they have had any exceedances of the effluent limits set by its NPDES permit; 2) lists any exceedances detected; 3) identifies the causes of the exceedances and provides support for the determination of the causes; and 4) describes the corrective measures the City has taken and will take to address the exceedances, mitigate the harm, and prevent their recurrence, including but not limited to any changes in the facility, procedures, and/or practices.

25.     Every six months after the first report has been submitted, until December 2017, the City shall submit a follow-up report that covers the preceding six-month period and includes the same four sections as the initial report.

26.     Reports submitted under Paragraphs 24 and 25 shall contain the certification required by Paragraph 39.

27.     After reviewing the reports described in Paragraphs 24 and 25, EPA and IDEM will inform the City whether further investigations, corrective measures, or operational improvements are required to prevent future exceedances and the City will implement those measures, or comparable measures agreed upon by the parties within thirty (30) Days of EPA's notice requesting further investigations, corrective measures or operational improvements.

VI. COMPLIANCE REQUIREMENTS: PRETREATMENT MEASURES

A)      **Sewer Use Survey**

28.     No later than six months after the Consent Decree is lodged, the City shall conduct a sewer use survey to identify all significant industrial users (SIUs).  The City shall submit the completed survey to EPA and IDEM within ninety (90) Days of completion.

B)      **SIU Requirements**

29.     No later than six months after the Consent Decree is lodged, the City shall develop and carry-out an investigation program of all SIUs in the City in order to identify copper and pH discharges from all SIUs. This program will be reviewed and approved by EPA and IDEM before implementation.

30.     From the time the Consent Decree is lodged, the City shall require all SIUs to sample on the same weekly schedule used at the POTW.  All SIUs shall be required to

maintain the samples for at least forty-five (45) Days. If there are exceedences at the POTW, these samples shall be collected and analyzed by the City.

31.     From the time the Consent Decree is entered, the City shall provide EPA and IDEM copies of their pretreatment inspection trainings, checklists and reports. The City shall document steps taken to verify compliance after inspections.

32.     The City shall take appropriate enforcement action, consistent with the approved Enforcement Response Procedures and Sewer Use Ordinance, against all SIUs that violate the limits in the Sewer Use Ordinance and their permits.

## VII. <u>REPORTING REQUIREMENTS</u>

33.     The City shall submit all monthly Discharge Monitoring Reports and attachments to EPA at the same time they are submitted to IDEM as required by the Permit.

34.     The City shall conduct sampling, report all sampling results, and report pollutant values below the level of quantification as directed by Section I of the City's NPDES permit.

35.     Within thirty (30) Days after the end of each quarter (i.e., by April 30, July 30, October 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XIX, the City shall submit in writing to the State and to EPA a quarterly report for the preceding quarter that shall include the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; and updates on operation and maintenance.   This report shall also include a description of any SIU violations of effluent limits included in the

pretreatment ordinance or a permit and any actions, including enforcement actions, taken against those SIUs.

36.     If the City violates, or has reason to believe that it may violate, any requirement of this Consent Decree, the City shall provide a report to the United States and the State of such violation and its likely duration, in writing, within ten (10) working Days of the Day the City first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, the City shall so state in the report.  The City shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day the City becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves the City of its obligation to provide the notice required by Section X of this Consent Decree (Force Majeure).

37.     Whenever any violation of this Consent Decree or of any applicable requirement, including permit requirement, or any other event affecting the City's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, the City shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after the City first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

38.     All reports shall be submitted to the persons designated in Section XV of this Consent Decree (Notices).

39.     Each report submitted by the City under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

40.     The reporting requirements of this Consent Decree do not relieve the City of any reporting obligations required by the Clean Water Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

41.     Any information provided pursuant to this Consent Decree may be used by the United States in any administrative, civil or criminal proceeding. The City shall not object to the admissibility into evidence of any information provided under the requirements of this Consent Decree or the Permit in any proceeding to enforce this Consent Decree.

## VIII. APPROVAL OF DELIVERABLES

42.     After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA after consultation with the State shall in writing: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

43.     If the submission is approved pursuant to Paragraph 42.a, the City shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 42.b or .c, the City shall, upon written direction from EPA after consultation with the State, take all actions required by the approved plan, report, or other item that EPA after consultation with the State determines are technically severable from any disapproved portions, subject to the City's right to dispute only the specified conditions or the disapproved portions, under Section XI of this Decree (Dispute Resolution).

44.     If the submission is disapproved in whole or in part pursuant to Paragraph 42.c or .d, the City shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, the City shall proceed in accordance with the preceding Paragraph.

45.     Any stipulated penalties applicable to the original submission, as provided in Section IX of this Decree, shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the City's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

46.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the State, may again require the City to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself/themselves correct any deficiencies, subject to the City's right to invoke Dispute Resolution and the right of EPA and the State to seek stipulated penalties as provided in the preceding Paragraphs.  Upon the approval by Plaintiffs of any deliverable, including approvals with modifications, the submission as approved shall be incorporated herein as part of this Consent Decree and enforceable hereunder.

## IX. STIPULATED PENALTIES

47.     The City shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

48.     Late Payment of Civil Penalty.  If the City fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, the City shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

49.     Compliance, Reporting and Deliverable Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Paragraphs 13 to 46, or for each violation of any requirement of the City's permit, including effluent limitations.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ *2,000* | *1st through 14th Day* |
| $ *4,000* | *15th through 30th Day* |
| $ *8,000* | *31st Day and beyond* |

50.     Except as provided in subparagraph 53, stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

51.     The City shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.

52.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

53.     Stipulated penalties shall continue to accrue as provided in Paragraph 50, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the City shall pay accrued penalties determined to be owed, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, the City shall pay all accrued penalties determined by the Court to be

owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, the City shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

54.      <u>Obligations Prior to the Effective Date</u>.  Upon the Court's entry of this Consent Decree, the stipulated penalty provisions of the Decree shall be retroactively enforceable with regard to those violations of Paragraphs 13 to 46 for which the required compliance date is from the date of the lodging of the Consent Decree and that occurred after the lodging date and before the date of entry of the Consent Decree.

55.      The City shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

56.      If the City fails to pay stipulated penalties according to the terms of this Consent Decree, the City shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for the City's failure to pay any stipulated penalties.

57.      Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree

shall be in addition to any other rights, remedies, or sanctions available to the United States for the City's violation of this Consent Decree or applicable law.

## X. FORCE MAJEURE

58.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the City, of any entity controlled by the City, or of the City's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the City's best efforts to fulfill the obligation.  The requirement that the City exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include the City's financial inability to perform any obligation under this Consent Decree.

59.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the City shall provide notice orally or by electronic or facsimile transmission to the United States, within 72 hours of when the City first knew that the event might cause a delay.  Within seven (7) Days thereafter, the City shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the City's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the City, such event may cause or contribute to an endangerment to public health,

welfare or the environment. The City shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude the City from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The City shall be deemed to know of any circumstance of which the City, any entity controlled by the City, or the City's contractors knew or should have known.

60. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify the City in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

61. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the City in writing of its decision.

62. If the City elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, the City shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be

warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the City complied with the requirements of Paragraph 59 above. If the City carries this burden, the delay at issue shall be deemed not to be a violation by the City of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI. DISPUTE RESOLUTION

63.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. The City's failure to seek resolution of a dispute under this Section shall preclude the City from raising any such issue as a defense to an action by the United States to enforce any obligation of the City arising under this Decree.

64.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when the City sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, the City invokes formal dispute resolution procedures as set forth below.

65.     Formal Dispute Resolution.  The City shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the

United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the City's position and any supporting documentation relied upon by the City.

66.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of the City's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on the City, unless the City files a motion for judicial review of the dispute in accordance with the following Paragraph.

67.     The City may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within ten (10) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of the City's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

68.     The United States shall respond to the City's motion within the time period allowed by the Local Rules of this Court.  The City may file a reply memorandum, to the extent permitted by the Local Rules.

69. <u>Standard of Review</u>

a. <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 65 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the City shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 65, the City shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

70. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 53. If the City does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

71. The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by or relevant to assessing compliance with this Consent Decree, including but not limited to the POTW and the sewer system, at all reasonable times, upon presentation of credentials, to:

        a. monitor the progress of activities required under this Consent Decree;

        b. verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

        c. obtain  samples and, upon request, splits of any samples taken by the City or its representatives, contractors, or consultants;

        d. obtain documentary evidence, including photographs and similar data; and

        e. assess the City's compliance with this Consent Decree.

72. Upon request, the City shall provide EPA and the State or their authorized representatives splits of any samples taken by the City.  Upon request, EPA and the State shall provide the City splits of any samples taken by EPA or the State.

73. The City shall use, and preserve for at least five years, all process control and daily operation worksheets.

74. The City shall use, and preserve for at least five years, chain of custody forms.

75.     Until five years after the termination of this Consent Decree, the City shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to the City's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, the City shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

76.     At the conclusion of the information-retention period provided in the preceding Paragraph, the City shall notify the United States and the State at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, the City shall deliver any such documents, records, or other information to EPA or the State.  The City may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the City asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted

by the City. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

77. The City may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that the City seeks to protect as CBI, the City shall follow the procedures set forth in 40 C.F.R. Part 2.

78. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the City to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

79. This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of lodging.

80. The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 79. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 79. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the

environment arising at, or posed by, the City's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

81.     Nothing in this Consent Decree limits the rights or defenses available under Section 309(e) of the Clean Water Act, 33 U.S.C. § 1319(e), in the event that the laws of the State, as currently or hereafter enacted, may prevent the City from raising the revenues needed to comply with this Decree.

82.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Facility or the City's violations, the City shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 79 of this Section.

83.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The City is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the City's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that the City's compliance with any aspect of this Consent Decree

will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

84.     Where any compliance obligation under Section V requires the City to obtain a federal, state, or local permit or approval, the City shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. The City may seek relief under the provisions of Section X of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if the City has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

85.     This Consent Decree does not limit or affect the rights of the City or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against the City, except as otherwise provided by law.

86.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV. COSTS

87.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by the City.

## XV. <u>NOTICES</u>

88.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

<u>To the United States</u>:

<u>To the U.S. Department of Justice</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-09648

and

<u>To EPA</u>:

Director, Water Division (WD-15J)
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604

Chief, Water Enforcement and Compliance Assurance Branch (WC-15J)
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604

and

Maria Gonzalez
Associate Regional Counsel
Office of Regional Counsel (C-14J)
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604

To the State:

Mary Hoover, Chief
Water Enforcement Section
Indiana Department of Environmental Management
Mail Code 60-02W
100 N. Senate Ave.
Indianapolis, IN 46204-2251


To the City:

Office of Mayor
300 East Pike Street
Crawfordsville, Indiana 47933


89.     Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

90.     Notices submitted pursuant to this Section shall be deemed submitted

upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the

Parties in writing.

## XVI. EFFECTIVE DATE

91.     The Effective Date of this Consent Decree shall be the date upon which

this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket; provided, however, that the City

hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective

Date.  In the event the United States withdraws or withholds consent to this Consent Decree

before entry, or the Court declines to enter the Consent Decree, then the preceding requirement

to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII. <u>RETENTION OF JURISDICTION</u>

92.     The Court shall retain jurisdiction over this case until termination of this

Consent Decree, for the purpose of resolving disputes arising under this Decree or entering

orders modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing

compliance with the terms of this Decree.

## XVIII. <u>MODIFICATION</u>

93.     The terms of this Consent Decree, including any attached appendices, may

be modified only by a subsequent written agreement signed by all the Parties.  Where the

modification constitutes a material change to this Decree, it shall be effective only upon approval

by the Court.

94.     Any disputes concerning modification of this Decree shall be resolved

pursuant to Section XI of this Decree (Dispute Resolution), provided, however, that, instead of

the burden of proof provided by Paragraph 69, the Party seeking the modification bears the

burden of demonstrating that it is entitled to the requested modification in accordance with

Fed.  R. Civ. P. 60(b).

## XIX. <u>TERMINATION</u>

95.     After the City has completed the requirements of Section V (Compliance

Requirements: Improvements at the POTW), Section VI (Compliance Requirements:

Pretreatment Measures), Section VII (Reporting Requirements), and Section VIII (Approval of

Deliverables) of this Decree, has thereafter maintained satisfactory compliance with this Consent

Decree and the City's permit for a period of two years, and has paid the civil penalty and any

accrued stipulated penalties as required by this Consent Decree, the City may serve upon the

United States and the State a Request for Termination, stating that the City has satisfied those requirements, together with all necessary supporting documentation.

96.     Following receipt by the United States and the State of the City's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the City has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States after consultation with the State agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

97.     If the United States after consultation with the State does not agree that the Decree may be terminated, the City may invoke Dispute Resolution under Section XI of this Decree.  However, the City shall not seek Dispute Resolution of any dispute regarding termination, under Section XI, until sixty (60) Days after service of its Request for Termination.

## XX. PUBLIC PARTICIPATION

98.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  The City consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the City in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

99.     Each undersigned representative of the City, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

100.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  The City agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII. INTEGRATION

101.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Attachments and all other deliverables required under this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII. APPENDICES

102.    The following are attached to and incorporated into this Consent Decree:

Appendix A:  Asset Management Plan

## XXIV. FINAL JUDGMENT

103.     Upon approval and entry of this Consent Decree by the Court, this

Consent Decree shall constitute a final judgment of the Court as to the United States, the State,

and the City.  The Court shall issue a separate judgment pursuant to Fed. R. Civ. P. 58.

Dated   02/19/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. City of Crawfordsville,*

FOR THE UNITED STATES OF AMERICA:

Date: 12/26/13

ROBERT G. DREHER
Acting Assistant Attorney General
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

JOSEPH H. HOGSETT
United States Attorney
Southern District of Indiana

Date: 11/27/13

KATHERINE A. ABEND
BONNIE A. COSGROVE
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Telephone: (202) 514-2463
Facsimile: (202) 514-8395

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. City of Crawfordsville,*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

Date: 10 - 25 - 13

SUSAN HEDMAN
Regional Administrator
U.S. Environmental Protection Agency
Region 5

Date: September 3, 2013

ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency, Region 5

OF COUNSEL:

MARIA E. GONZALEZ
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5

GINNY PHILLIPS
Attorney
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. City of Crawfordsville,*

FOR THE STATE OF INDIANA:

Date: _OCTOBER 23, 2013_

Thomas W. Easterly
Commissioner

Date: _October 25, 2013_

PATRICIA ORLOFF ERDMANN
Chief Counsel for Litigation
Office of the Indiana Attorney General
302 West Washington Street
IGCS, 5th Floor
Indianapolis, IN 46204

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. City of Crawfordsville,*

FOR THE CITY OF CRAWFORDSVILLE:

Date: DECEMBER 4, 2013

TODD D. BARTON
Mayor
City of Crawfordsville
300 East Pike Street
Crawfordsville, IN 47933

# Appendix A

# Asset Management Plan

The City shall develop an asset management plan to ensure the long-term sustainability of the wastewater utility.  The plan shall assist in making decisions on when it is most appropriate to repair, replace, or rehabilitate particular assets and long-term funding strategies. Within six months of the date of entry of the Consent Decree, an Asset Management Plan shall be developed and submitted to the EPA per Section V (Compliance Requirements: Improvements at the POTW), Paragraph 23, found herein.  The plan shall include, but is not limited to:

- Asset Inventory and State of the Asset
- Level of Service
- Critical Asset Identification
- Life Cycle Costing
- Long-term Funding Strategy

## 1.1 Asset Inventory
- Identify and inventory all wastewater assets owned by the municipality.
- Name (or Asset Tag #) for the Asset.
- Map the location(s) of the assets (along with collected GPS coordinates), as appropriate, and put the location(s) in the inventory.  The collection system map shall be of sufficient detail and at a scale to allow easy interpretation. The collection system information shown on the map shall be based on current conditions and shall be kept up to date and available for review.  Such map(s) and collected data shall include, but not be limited to, the following:
    1. A numbering system which uniquely identifies manholes, catch basins, overflow points, regulators, outfalls, wastewater treatment unit process assets, or other assets;
    2. All sanitary sewer lines and combined sewer lines and related manholes. Manhole data collected shall include the following:
        A. GPS coordinates for manhole;
        B. Interior materials of construction;
        C. Inlet pipes' diameter size and materials of construction;
        D. Outlet pipes' diameter size and materials of construction;
        E. Manhole rim elevation;
        F. Depth to invert (inside bottom of pipe) from rim elevation;
        G. If rim well below above ground elevations, height of rim above ground surface;
        H. Any NASCCO protocol identified defects outstanding.

3. Each sewer segment's assigned name or number (if applicable), pipe diameter, date of installation, type of material, distance between manholes, and the direction of flow.
4. All combined system catch basins.
5. All CSO regulators and their approximate GPS coordinates.
6. All known or suspected connections between the sanitary sewer or combined sewer and storm drain systems and their approximate GPS coordinates.
7. All outfalls, including the treatment plant outfall(s), combined sewer treatment facility outfalls (RTBs), untreated CSOs, and any known SSOs and their GPS coordinates, respectively.
8. All pump stations and force mains.
9. Other major appurtenances such as invested siphons and air release valves and their GPS coordinates.
10. The wastewater treatment facility, including all unit treatment processes.
11. All surface waters (labeled).
12. The scale and a north arrow.

- Identify anticipated <u>Level of Service</u> (LOS) for the Asset (e.g, Pump Station #31, Pump #2: 20 gpm).
- Identify the <u>current condition</u> of the assets (e.g., excellent, good, fair, poor).
- Identify the <u>current performance</u> of the asset.
- Identify any <u>redundancy</u> provided for the asset.
- Identify the <u>purchase/installation date</u> of the asset.
- Identify the original <u>purchase price</u> of the asset, if known.
- Identify the <u>remaining useful life</u> of the assets.
- Identify the value of the assets using the <u>cost it would be to replace the assets</u> using the technology the system would employ to replace them.

## 1.2  Identify the Planned Level of Service for the Asset
- Overall Process Level; (WWTP Example: Discharge at NPDES Outfall meeting all permit limitations)
- Individual Asset Level; (Pump Example:  Northeast Town Pump Station Pump #2: 20 gpm)

## 1.3 Critical Asset

The City shall determine how the asset may fail and estimate the overall risk of the asset considering both to arrive at ranked assets' criticality:

1) the likelihood (probability) of failure, and
2) the consequence (severity) of failure

using a quantitative method with categories that identify the risk status and any assets which have deemed to be most critical to sustain ongoing agreed upon service and performance.

### 1.4 Life Cycle Costing

The City shall identify management options and strategies that consider relevant economic and physical consequences, from initial asset planning through ultimate disposal.

### 1.5 Long-Term Funding Strategy

The City shall determine the best manner in which to fund the operation and maintenance, repair, rehabilitation, and replacement of assets to sustain service and performance.

### 1.6 Asset Management Plan Updates

The City shall provide EPA with semi-annual updates on the implementation of the asset management plan.

**Note: Inherent in any sound asset management is the need to have appropriate levels of qualified staff, a sound preventative maintenance program, appropriate training for anticipated service and repair work and the goals of the asset management plan, appropriate capital and expense budgeting, and overall management of the plan.**